AO 91 (Rev. 11/11) Criminal Complaint

AUSA: Stephen Carr Telephone: (313) 226-9100
Task Force Officer: Joseph Scott Telephone: (313) 965-2323

# UNITED STATES DISTRICT COURT

for the

Eastern District of Michigan

United States of America
v.
Matthew Lyman JONES

Case: 2:26-mj-30712
Assigned To : Unassigned
Assign. Date : 11/13/2026
Description: CMP USA v Jones (SH)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of October 5, 2026 in the county of Wayne in the Eastern District of Michigan, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a firearm and ammunition. |
| 21 U.S.C. § 841(a)(1) | Possession wtih intent to distribute a controlled substance. |
| 18 U.S.C. § 924(c) | Possession of a firearm in furtherance of a drug trafficking offense. |

This criminal complaint is based on these facts:

☐ Continued on the attached sheet.

[signature]
*Complainant's signature*

Joseph Scott, Task Force Officer (F.B.I.)
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

[signature]
*Judge's signature*

Date: November 13, 2026

City and state: Detroit, Michigan

Hon. Anthony P. Patti, U.S. Magistrate Judge
*Printed name and title*

# Affidavit in Support of a Criminal Complaint

I, Joseph Scott, being sworn, depose and state the following:

## Executive Summary

1. On October 5, 2026, the Livonia Police Intelligence Bureau purchased a firearm from Matthew Lyman Jones, a convicted felon, currently on parole in the State of Michigan for second-degree home invasion. Jones sold an undercover Livonia Police Officer a Colt Detective .38cal revolver that was stolen out of Illinois. Jones was arrested the next day with a blue Samsung cell phone. After being taken into custody, Jones was transferred back to the custody of the Michigan Department of Corrections (MDOC) for violating the terms of his parole.

2. After Jones was arrested, Livonia Police searched Jones's mother's house on Maryland Street in Grosse Pointe Park, Michigan, near where Jones had sold the undercover officer the revolver. During the search, Livonia Police located a Taurus 9mm pistol, approximately 18.7g of fentanyl as packaged, and approximately 22.4g of a narcotic cutting agent in a location where Jones told them they would be.

## Introduction and Agent Background

3. I am a Task Force Officer with the FBI and have been since July 2025. I am currently assigned to the FBI Detroit Violent Crime Task Force (VCTF). I have conducted or assisted in numerous investigations of federal and state crimes, including crimes of violence, firearms, and drug trafficking. I have gained experience through training and everyday work related to these types of investigations.

4. The information set forth in this affidavit is based on my review of information from other law enforcement agents and investigators, witnesses, and individuals with knowledge of this matter; my investigation; my review of documents, photographs, and videos; and information gained through my training and experience. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not contain all details or facts of which I am aware relating to this investigation.

5. I make this affidavit from personal knowledge based on my participation in this investigation, from information learned from other federal, state, and local law enforcement personnel, and from information gained through my training and experience.

6. I submit this affidavit in support of a complaint and arrest warrant for Matthew Lyman JONES for violations of 18 U.S.C. § 922(g) felon in possession of a firearm and ammunition; 21 U.S.C. § 841(a), possession of a controlled substance with the intent to distribute it; and 18 U.S.C. § 924(c) possession of a firearm in furtherance of drug trafficking (the Target Offenses).

**Probable Cause**

7. The FBI is investigating Matthew Lyman Jones for violations of 18 U.S.C. § 922(g) felon in possession of a firearm and ammunition; 21 U.S.C. § 841(a), possession of a controlled substance with the intent to distribute it; and 18 U.S.C. § 924(c) possession of a firearm in furtherance of drug trafficking (the Target Offenses).

8. Jones has the following felony convictions:

a. On or about April 10, 2015, in the Ward County District Court in North Dakota, Jones was convicted of felony contact via bodily fluid;

b. On or about July 13, 2021, in the 16th Circuit Court, for Macomb County, Michigan, Jones was convicted of felony possession of methamphetamine, felony possession of

analogues, and misdemeanor attempted possession of a firearm in a motor vehicle;

c. On or about January 4, 2023, in the 3rd Circuit Court for Wayne County, Michigan, Jones was convicted of felony second-degree home invasion;

d. On or about January 11, 2023, in the 16th Circuit Court for Macomb County, Jones was convicted of felony assault with a dangerous weapon and felony firearm.

**Undercover Purchase of a Revolver from Jones**

9. Jones was paroled from the MDOC on September 15, 2026 on his second-degree home invasion conviction.

10. In early October 2026, members of the Livonia Police Intelligence Bureau conducted an undercover operation targeting Jones. A cooperating individual (CI), working with the Livonia Police Department contacted Jones via cellular telephone number at the direction of law enforcement to ask about purchasing a firearm. The CI arranged for an undercover Livonia Police Officer (UC) to be present for the firearm sale.

11. During the conversation, Jones agreed to deal directly with the UC without the CI being present. Jones instructed the CI to have the UC meet him at Jones's mother's residence on Maryland Street in Grosse Pointe Park.

12. After agreeing to the deal, the UC was provided with pre-recorded buy funds by Livonia Police. The UC then drove to Maryland Street. As the UC began driving to Maryland Street, other members of the Livonia Police Intelligence Bureau watched the house.

13. While enroute to Maryland Street, the UC was contacted by the CI. The CI informed the UC that he had just spoken with Jones who instructed the CI to inform the UC to meet him at a church on Maryland Street near his mother's residence.

14. Once the UC arrived at the church on Maryland Street, Livonia Police watched Jones walk from the front porch of his mother's house to the UC's vehicle. Jones entered the front passenger side door of the UC's vehicle.

15. Inside the UC's vehicle, Jones took out an unloaded black snub-nose style revolver from the left side of his pants and handed it to the UC. Jones then retrieved a tan semi-automatic handgun from the

right side of his pants and handed it to the UC. While examining the tan semi-automatic handgun, the UC removed the magazine from the handgun and learned the firearm was loaded. The UC then returned the tan semi-auto handgun back to Jones and told him he would like to buy the revolver. Jones handed the snub nose revolver to the UC. The UC then handed Jones the pre-recorded buy funds as payment for the snub-nose revolver.

16. After selling the revolver, JONES exited the UC vehicle, walked directly back to his mother's house on Maryland Street and entered the house through the front door.

17. The revolver Jones sold to the UC, a Colt Detective .38 Special, was reported as stolen out of Danville, IL on May 12, 1994.

18. Given that the Colt .38 pistol was stolen in Illinois in 1994, it would have traveled in interstate commerce to be in Jones's possession in Michigan on the date it was sold to the UC.

**Jones's Arrest the Next Day**

19. On October 6, 2026, members of the Livonia Police Intelligence Bureau learned that Jones was to report to the Detroit Police

Second Precinct to meet with his parole agent. Livonia police arrested Jones when he entered the front lobby of the precinct.

20. After he was arrested, Livonia police told Jones that a search warrant was going to be executed at his mother's residence on Maryland Street. Jones informed the officers that there was a gun and suspected narcotics in the top right drawer of a white dresser in the basement of the home.

21. Later in the day, Livonia police executed a search warrant at the Maryland Street house and located a loaded black and tan Taurus 709 Slim 9mm, approximately 18.7 grams of fentanyl, and approximately 22.4 grams of lactose (a narcotic cutting agent) all in the top drawer of a white dresser along the center wall of the basement. In addition, officers located a residency document for Jones inside of a cardboard box in the northeast corner of the basement.

22. Livonia Police contacted the owner of the Taurus 9mm handgun who told police that the gun had been stolen from her in January of 2024.

## Jones's Interview with Police

23. After the execution of the search warrant, a Livonia Police Officer interviewed Jones at the Livonia Police Department. Prior to the interview, Jones read his *Miranda* warnings out loud and indicated that he understood them. Jones told police that he possessed a tan Taurus 9mm pistol, the same make, model and color as the gun he had shown the UC officer, in a dresser in the basement of the house on Maryland street. He also admitted to the police that he possessed two bags of powdered substances, in that same dresser near the gun, one white and one brown, which he "assumed" were cocaine and heroin although he denied that he knew they were drugs.

24. Jones claimed that he "was just trying to make a couple dollars to fucking survive." Jones also confirmed that he sold a "38" firearm to a male on the day before and explained that the deal occurred in a parking lot near his mother's house on Maryland Street.

25. After his arrest, Jones was transferred to the Charles Egeler Reception and Guidance Center. I spoke with an MDOC agent who confirmed that Jones had a blue Samsung cell phone in his property at the Egeler Reception and Guidance Center.

26. On October 14, 2026, an MDOC officer provided the FBI with Jones' cell phone in order for a forensic download to be conducted. I transported Jones's cell phone directly from the Egeler Reception and Guidance Center to the FBI Detroit Office at 477 Michigan Ave, Detroit, MI.

27. After obtaining Jones' cell phone, I obtained a search warrant to have a forensic download conducted on it.

28. During an examination of the contents of Jones' phone, I located several conversations indicating that he was actively trying to traffic narcotics. In one text conversation, Jones inquired about the street value of a quantity of narcotics and after being unsatisfied with the pricing he was told, indicated that he would get in contact with a personal drug dealer of his. In a second conversation, Jones was soliciting another subject to sell controlled Oxycodone pills for him.

## Conclusion

29. Probably cause exists that Matthew Lymanb Jones did possess firearms and ammunition as a prohibited person in violation of 18, U.S.C. § 922(g), possess a controlled substance with the intent to distribute it in violation of Title 21 U.S.C. § 841(a), and did possess a firearm in furtherance of drug trafficking in violation of Title 18 U.S.C. § 924(c).

Respectfully submitted,

Joseph Scott
Task Force Officer
Federal Bureau of Investigation

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Hon. Anthony P. Patti
United States Magistrate Judge

Dated: November 13, 2026